ANN WALSH BRADLEY, J.
¶ 53. {dissenting). I disagree with a majority of this court when it opines that the facts here do not constitute a violation of the confidentiality rule.
¶ 54. A fundamental principle in the attorney-client relationship is that, in the absence of the client's informed consent or a specific exception, the attorney must not reveal information relating to the representation. This principle is essential to the trust that is the hallmark of the attorney-client relationship.
*577 ¶ 55. Supreme court rule 20:1.6, the confidentiality rule, embodies this fundamental principle. It promotes competent and effective representation by encouraging clients to speak frankly with their attorneys while protecting clients from the disclosure of embarrassing and potentially legally damaging information. It provides in relevant part:
(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, ... except....
(c) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: ....
(4).. . to respond to allegations in any proceeding concerning the lawyer's representation of the client ....
¶ 56. Here there is no dispute that the client did not give consent. The issue then becomes whether the attorney's disclosure of information falls within the relevant exception in sub. (4). I conclude it does not. Because the September 29, 2008 letter falls outside of this recognized exception, I conclude that there was a violation of SCR 20:1.6.
¶ 57. The essence of the majority's analysis is that the disclosures were permitted here because the rule does not expressly limit permissible disclosures of attorney-client communications to only judicially supervised settings. ("Our rule does not limit permissible disclosures to judicially supervised settings . . . ."Majority op., ¶ 41; see also ¶ 51.)
¶ 58. Unlike the majority, I think that the only reasonable interpretation of sub. (4) is that the disclosure of information must be in a court setting, i.e. a *578 judicially supervised setting. Subsection (4) allows for disclosure of information "to respond to allegations in any proceeding concerning the lawyer's representation of the client." Under the facts of this case, the appropriate proceeding is the Machner hearing, where the attorney responds to allegations of ineffective representation.[1]
¶ 59. As recognized by the majority, the referee had harsh words for Attorney Thompson. Majority op., ¶ 40. The referee admonished Thompson for "unfairly maligning Derek C.'s position before the Machner hearing was ever called to order." Id. Most importantly, the referee understood the importance of having the communication "filtered through the adversary process, or the judiciary's role in limiting the extent of the defendant's waiver of the lawyer-client privilege." Id.
¶ 60. At a Machner hearing, the disclosure of information is subject to a judicial determination of relevance and privilege. The judicial proceeding provides a necessary check on the scope of the disclosure, assuring that the disclosure of confidential information involves only that which is necessary to resolve the claim.
¶ 61. Even if the majority were correct that disclosure is permitted outside of judicially supervised proceedings, it appears to me that the breadth of the disclosures in the September 29, 2008 letter went beyond the bounds reasonably necessary to respond to Thompson's pre-Machner motions.[2]
*579 ¶ 62. The majority states that "[t]he fact that Attorney Thompson sought and obtained leave of the court to respond to the motions is critical to our ruling in this case." Majority op., ¶ 33. However, permission to respond to a motion is not permission to go beyond the limits of the confidentiality rule embodied in SCR 20:1.6, nor to violate the principles of attorney-client privilege.
¶ 63. The referee in this case agreed with the assertion of the OLR that the disclosures in the letter were not objectively reasonable. The OLR summarized the contents of the September 29,2008 letter as follows:
Challenging a client's alibi, discussing conversation[s] with his client's family members, commenting on his client's demeanor and integrity, dismissing the testimony of potentially favorable defense witnesses, etc. directly impugned the client and improperly revealed *580 critical information related to the representation. It is difficult to construct a more devastating attack by an attorney on his own client.
Majority op., ¶ 39.
¶ 64. In arriving at the conclusion that the disclosures in the letter were not objectively reasonable, the referee made detailed findings of fact regarding the contents of the letter. See ¶ 61 n.2 supra. There is nothing to indicate that those findings are clearly erroneous.
¶ 65. Accordingly, for the reasons set forth above, I respectfully dissent.
¶ 66. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

 State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Wis. App. 1979).

 Findings of Fact 45 of the Referee's Report states:
The 9/29/08 letter clearly revealed client information to the court, and much of it was in the nature of confidential information. There was a thorough discussion of Mr. Thompson's early commu *579 nications with the client with reference to the defendant's father who "suspected that the children and the victim's family were engaged in sexual abuse." Mr. Thompson related an early discussion with the client about alibi defenses but informed the court that the defendant had never provided alibi information until the end of the June hearing. There is reference to Mr. Thompson's March letter to the defendant, a confidential letter regarding plea discussions which was certainly not a part of the court file. In addressing the defendant's lack of communication and cooperation, Mr. Thompson described his demeanor as "calm, deliberate, articulate, glib, impenetrable and cocky." Mr. Thompson disclosed his conversations with potential alibi witnesses and noted the deficiencies in their recollections. He dismissed the experts retained by appellate counsel, questioning the integrity of their conclusions and suggesting that his own opinions on truthfulness should he admissible. Mr. Thompson detailed his response to the Director of the State Public Defender, claiming that appellate counsel was developing a "new" case and telling her about the "exploding alibi" in this case. He stated that another witness, [] had perjured herself in an affidavit submitted by Mr. Leeper in support of the Motion for New Trial.